McFarland, J., dissenting.
I dissent. I have not the time, and there is no necessity, to state my views at large on the questions here involved. I will state some of them, however, briefly.
1. The undisputed general rule is, that all presumptions are in favor of the constitutionality of statutes; that before an act of a co-ordinate branch of the government can be declared invalid by the judiciary for the reason that it is in conflict with the constitution, such conflict must be clear, positive, abrupt, and unquestionable; and that in case of fair, reasonable doubt of b's constitutionality, the statute should be upheld. I state this old rule5 here because I think it particularly applicable to the case at bar; for at best, the unconstitutionality of the statute here in question is certainly not so clear as to be seen without a good deal of microscopic aid.
2. The amendment of 1887 was not, in my opinion, in violation of section 9 of article XI. of the constitution, which provides against increase of compensation “ after election.” Bonneau, the county clerk, whose deputy Dougherty, the plaintiff, is, was elected after the *624 passage of said amendment; and lie did not “ contract,” as contended by appellant, that he would do all the work of his office, or pay a deputy if necessary to employ one. The law which gave the contingent right to have a deputy paid by the county was in force at the time of his election. Moreover, the employment of a deputy paid by the county did not “increase the compensation ” of the county clerk. His compensation was the same after the employment of the deputy as before. It is contended that his compensation was increased because his work was lessened. Now, in the first place, thero is no such presumption; the presumption is, that the board allowed the deputy because there was additional work for him to do. But in the second place, suppose his work was lessened, shall a solemn act of the legislature be declared void by the circuitous reasoning which brings us to the conclusion that a decrease of duties is an “actual increase of compensation” within the meaning of the constitution? Suppose that the legislature had created a new county office, and transferred to the incumbent of such new office a part of the business formerly required to be done by the county clerk, would that have been an “ increase of compensation ” of the county clerk?
3. Neither do I think that the amendment is “special legislation ” inhibited by section 25 of article IV., or that it has not a “ uniform operation ” within the meaning of section 2 of article I. The legislature has the power to “establish a system of county governments” (art. XI., sec. 4), and to “regulate ” the compensation of county officers, “ and for this purpose may classify the counties by population.” (Art. XI., sec. 5.) Under these provisions, the- legislature may create as many classess as its judgment dictates; and such classification is not special legislation (Longan v. Solano County, 65 Cal. 122); and of course, if such legislation is not “special,” it has a “uniform operation,” because it operates alike on each of the classes upon which it operates at all.
4. And I see nothing, in the point that the board of *625 supervisors could not be given tbe power to allow the deputy and provide for his salary. The constitution merely declares that the legislature shall, by general laws, 'provide for the election “ or appointment” of certain named county officers, and regulate their compensation. (Art. IX., sec. 5.) The deputy involved in the case at bar can hardly be considered as one of the county officers mentioned in the section just referred to; but if he were, it is difficult to see why the legislature could not “provide” for his appointment in the way mentioned in the statute under consideration. And the legislature is only to regulate the compensation. I confess that I can find no authority in either common or law literature for giving to the word “ regulate ” the meaning of “ fix,” — that is, to name, definitely, exactly, and mathematically, the very sum in dollars and cents of the compensation. I find no general or law dictionary which uses the word “fix” at all in defining the word “ regulate,” or gives one as the synonym of the other. Indeed, the words seem to have quite different significations. Some of the definitions of “fix” are, to make “firm, staple, or fast”; “to.set or place permanently”; “to fasten immovably.” (Webster.) The common definitions of “regulate” are “to adjust by rule, method, or established mode”; “to direct by rule or restriction”-, “to subject to governing principles of law.” (Webster.) These same definitions of “ regulate ” are to be found in law dictionaries. The latter word, therefore, has much greater latitude of meaning than “ fix,” which includes the notion of inflexibility and rigidity. To fix is to fasten a thing immovably, — as with nail and hammer; while to regulate includes the idea of marking the boundaries and prescribing the methods within and by which the thing may be done by others. I know that words are uncertain things, and must be construed with reference to the context and relations in which they are found; but certainly a word should not be strained from its usual to a restricted sense when the result of such construction is to upset a statute. Therefore, giving to *626 “ regulate ” what, it seems to me, is clearly its usual meaning, I see no question in the case about unwarranted “ delegation of authority ” by the legislature. The constitution expressly provided that “ the legislature shall provide a system of county governments,’» which shall have, to a large extent, legislative powers; .and I cannot see how the power to employ and pay deputies in county offices, within restricted limits, is different from the numerous other powers which boards of supervisors are exercising every day without question. The code formerly provided that the board of supervisors shall have the power “ to fix the compensation of all -county officers not otherwise in this code or by general <or special law fixed, and provide for the payment of the same ” (Pol. Code, sec. 4046); and this court held, in Kinsey v. Kellogg, 65 Cal. 115, that such power was properly granted. This was practically holding that the county governments might be given the power to fix .the salaries of all county officers.
I do not think that the position of appellant is made any stronger by putting it in the form of the proposition that the amendment of 1887 undertook to give the board .of supervisors the power “to change or suspend the law.” The amendment is in the very section 211 which ■contains all the law on the subject; and the change was made by the legislature itself.
In my opinion, the judgment should be affirmed.
Paterson, J., concurred in the views expressed by Mr. Justice McFarland.
The following is the opinion above referred to, rendered in Bank on the 20th of January, 1892: —
Garoutte, J.
This was an application for a writ of mandate to compel the defendant to pay a warrant for services rendered by plaintiff as deputy county clerk of Marin County. The trial court ordered the writ to issue, and this is an appeal from the judgment and order denying a new trial.
*627 The facts of the case are: One Bonneau was, at the commencement of this proceeding, and had been for more than four years next preceding thereto, the county clerk of Marin County. Said Bonneau was last elected in 1888, his term of office beginning January 7, 1889. Upon January 10, 1889, he filed an affidavit with the supervisors of said county, by which he showed that a deputy was required by him in the proper discharge of his duties as such county clerk, and said board at that time made an order allowing him a deputy at a salary of fifty dollars per month, to take effect from January 7, 1889. The order of the board of supervisors was made by authority of a provision of section 211 of the County Government Act as amended, found at page 207 of the Statutes of 1887, which reads: “Provided further, that whenever, in the opinion of the board of supervisors, the salary of.any county officer in the third, fourth, fifth, twelfth, twentieth [and several others] classes, as fixed and provided in this act, is insufficient to pay a reasonable compensation for the services required to be performed, the said board shall allow such officer a deputy, or such number of deputies as in their judgment may be required to do the business of such office, in connection with the principal, at a salary not to exceed one hundred dollars per month, to be paid at the times and in the manner that said principal is paid; provided, that an affidavit shall be filed by such officer with the said board, showing that such deputy or deputies are required by him in the proper discharge of his duties as such officer.”
It is' insisted by appellant that the order of the board of supervisors, made January 10, 1889, allowing the county clerk a deputy at a salary of fifty dollars per month, to be paid by the county, was an increase of the compensation of such county clerk after his election and during his term of office, and that such order, for these reasons, was void and of no effect, being in violation of the provisions of section 9, article XI., of the constitution of this state, wherein it is provided that “ the com *628 pensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office.” The order of the board under consideration was made after the election and during the term of office of said Bonneau, and the question presented is, Did the order allowing the clerk a deputy, and ordering that his salary be paid from the county treasury, increase the compensation of the county clerk? If it did increase his compensation, it is violative of the provision of the constitution just quoted, and must give way for that reason.
That part of the order wherein it is recited that “ the clerk is allowed a deputy ” of itself is practically of no effect and force, because the clerk, by virtue of his office, has the power to appoint one or more deputies to perform, or assist him in the performance of, the duties of such office, entirely regardless of the wishes or demands of the board of supervisors; and this order of the board, construed in connection with the statute, is substantially as follows: “ In the opinion of the board of supervisors of Marin County, the salary of the county clerk of said county, as now provided by law, is insufficient to pay a reasonable compensation for the services required to be performed by him, and it further appearing by the affidavit of the said clerk that a deputy is necessary to a proper performance of the duties of his office, it is ordered that such deputy be paid fifty dollars per month from the county treasury.” The duties resting upon Bonneau when he qualified as county clerk and entered upon his office were plain and unmistakable; for they are enumerated in detail by the statute, and upon every principle he was bound to discharge those duties. The law would not even allow him to take a single step in the performance of them until he agreed, under the solemnity of his oath, that he would “ perform all the duties of his office to the best of his ability.” If his duties as county clerk during the life of his term of office become so burdensome and assume such proportions that he has not the ability, either mental or physical, to *629 perform them, he is not thereby released from the obligations he assumed at the inception of his term of office. His services are purely ministerial, and if, through simple desire or actual necessity, assistance is wanted, the law allows him to call to his aid as many deputies as he may see fit to appoint. If unwilling to adopt this course, and unable to perform the duties of the office personally, he can resign; but as long as he remains in office he is bound to perform the duties of the office under his official oath, or remain and render himself amenable to charges and removal for neglect of official duty. In Evans v. City of Trenton, 24 N. J. L. 766, it is said: “ It is a well-settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services, nor does it alter the case that by subsequent statutes or ordinances his duties are increased, and not his salary. His undertaking is to perform the duties of his office, whatever they maybe, from time to time during his continuance in office for the compensation stipulated, whether these duties are diminished or increased; and whenever he considers the compensation inadequate he is at liberty to resign.” The constitution provides that the legislature shall, by general and uniform laws, provide for the election or appointment of county officers, and that it shall regulate the compensation of all such officers in proportion to duties. (Art. XI., sec. 5.) In pursuance of this provision, the legislature, by an act entitled “An act to establish a uniform system of county and township governments,” found at page 299, Statutes of California, 1883, proceeded to carry into effect this provision of the constitution, and as amended by Statutes of 1885 (p. 178), fixed the salary of county clerks of counties of the twentieth class (of which Marin County was one) at two thousand five hundred dollars per annum, which was to be for the “ services required of them by law or by vir *630 tue of their office and section 211 of the same act (Stats. 1887, p. 207) further provided: “ The salaries and fees provided in this act shall be in full compensation for all services of every kind and description rendered by the officers therein named, either as officers or ex officio officers, their deputies or assistants, unless in this act otherwise provided, and all deputies employed shall be paid by their principals out of the salaries herein-before provided, unless in this act otherwise provided.” It will thus be seen from the foregoing principles and provisions of the statute and constitution, that a public officer accepts an office upon the condition that he will perform all the duties of the office, and while he remains in such office the public has the right to demand that he perform such duties.
In accordance with the mandate of the constitution, the legislature fixed the salary of the county clerk of Marin County in proportion to the duties of the office; not in proportion to the duties of the office the county clerk could personally perform; for the statute itself expressly provided that it should be in full compensation for the performance of all the duties of the office; although such would be the necessary construction of the provision of the constitution, regardless of the statute.
The fact that the law under which the board of supervisors acted in making the order was in force prior to the election of the county clerk is immaterial to the question involved, for it is not the act of the legislature that increases the compensation, but the order of the board of supervisors, passed- long after the act took effect, long after the election of the county clerk and during his term of office. The provision of the statute is entirely ineffectual, save simply as a delegation of power to the hoard of supervisors to order these things to be done. The legislature had no power upon the tenth day of January, 1889, to increase the compensation of the county clerk of Marin County, and not having the power itself so to do, much less could it authorize such board to do so. This provision of section 211 of the County Gov- *631 eminent Act applies to twenty classes of counties, and the county clerks in some of those classes of counties have salaries ranging from ten to thirteen thousand dollars per annum. Every reason that can be urged, and every principle of law that can be invoked, to sustain the validity of this order can be urged and invoked with the same force to sustain an order made by the various boards of supervisors of these counties allowing their county clerks all the deputies necessary for the proper administration of their offices, the counties paying therefor, and thus leaving their entire salaries remaining as compensation for their personal services. If such is the law, all the deputies of all the county officers of twenty classes of counties, under the general election of 1888, by order of the various boards of supervisors, could have been paid out of the county treasury of the respective counties. This doctrine can only be sustained upon the theory that the word “compensation,” as used in the constitution, refers simply to the personal services of the public officer, and not as compensation for the performance of all the duties of the office. The fact is directly to the contrary, and is so recognized by the legislature throughout these various provisions of the County Government Act. The board can only allow such deputy upon the request of the principal, and only when the principal insists that his services are necessary in the performance of the duties of the office. If not paid by order of the board from the county treasury, the principal, being bound to perform all the duties of his office, and a deputy being necessary, would be bound to employ the deputy and pay him from his own salary. The county, by order of the board, pays six hundred dollars per annum as part compensation for the performance of the duties of the clerk’s office. From a pecuniary standpoint, such course is a very substantial benefit to the county clerk. The deputy is under his control, is empowered by law to act in the place and stead of his principal in all matters; the principal is liable for his salary, and a payment by the county of such deputy’s *632 salary is, for all practical purposes, a payment to the principal, and in this case necessarily results in an increase of the principal’s compensation to the extent of six hundred dollars per annum. It is perfectly immaterial to the clerk whether his salary is increased to three thousand one hundred dollars per annum, and from that sum he pays his deputy six hundred dollars per annum, or that it remains at two thousand five hundred dollars and the county pays the deputy the six hundred dollars. The clerk reaps the full benefit of the six hundred dollars in both cases. To be sure, this reasoning concedes that the clerk must have the deputy, but such must be the fact, for the clerk is bound to perform all the duties of his office, and a deputy is a necessity to the performance of those duties, for, by his affidavit, he himself has so declared.
To construe this provision of the constitution so that a county clerk’s salary could not be increased during his term of office, but that an act of the legislature would be valid which provided that all of his deputies, men whom he was bound to employ and bound to pay in the absence of such an act, should be paid by the county, independent of and in addition to the clerk's salary, would be to allow that to be done indirectly which could not be done directly, and would be establishing a medium for the practice of the very abuses which the constitutional provision was inserted to destroy. The ■ provision of the statute appears to be a crude and ill-conceived effort tq evade a very plain and very wholesome provision of the constitution of the state.
Let us take a broader view of this provision of the County Government Act which authorizes the boards of supervisors of twenty classes of counties to pay the salaries of the deputies of all the county officers of the counties of those classes, under certain conditions and contingencies, an4 estimate its true worth by another test. Article I., section 11, of the constitution, requires that “all laws of a general nature shall have a uniform operation,” The County Government Act is essentially *633 a law of a “ general nature”; it must be so, to have any validity whatever; and with the provision under discussion before our eyes, can it be said the County Government Act has a uniform operation? In Ex parte Smith and Keating, 38 Cal. 702, Justice Sanderson said, referring to the meaning of the constitution in the use of the words “ uniform operation”: “Its meaning, as has been repeatedly declared by the highest judicial tribunal in the state, is, not that general laws must act alike upon all subjects of legislation, or upon all citizens and persons, but that they shall operate uniformly, or in-.,the same manner, upon all persons who stand in the same' category, — that is to say, upon all persons who stand in the same relation to the law in respect to the privileges and immunities conferred by it or the acts which it prohibits.”
We must view this question in the light of the fact that the County Government Act was intended to establish a uniform system of county governments, and that the classification of counties, and regulation of the compensation of county officers in proportion to duties, were important elements in the formation of that act, and were material portions to which the principle of uniformity was to be applied. When amended in 1887, by the provision delegating these powers to the boards of supervisors in twenty classes of counties, that provision simply became a part of the wdiole, a strand of the rope which formed the County Government Act; that provision certainly gained no additional strength or weight simply by being a more recent creation of the legislature than the act of which it became a part, and its validity must be weighed and tested as if it were a provision placed in the act of 1883. Now, does it disturb the uniformity of the operation of that act? We find the act first classified the counties of the state according to population, for the sole and express purpose of regulating the compensation of county officers according to their duties. It then regulated the compensation of county officers, according to their duties, but it did *634 not stop there; it provided further, that in twenty classes of counties, naming them, the supervisors of those counties might relieve the county officers of some of their official burdens, by ordering that their deputies be paid from the county treasury. By this provision the legislature destroyed the uniformity of the operation of the act. In twenty-eight classes of counties the compensation of county officers is fixed at an amount certain and definite, — an amount that cannot be changed save by an act of the legislature; but in the remaining twenty classes of counties the compensation for the performance of the duties by the various officers may fluctuate every month in the year at the mere whim of the boards of supervisors. The County Government Act, upon the same matters and under the same state of circumstances, should operate equally upon all classes of counties; but the legislature has said that in twenty classes of counties only, whenever the salary of county officers is insufficient to pay a reasonable compensation for the services required to be performed, the board of supervisors may allow them deputies at the county’s expense. Now, if the salaries should prove insufficient to pay a reasonable compensation to the county officers for the duties to be performed in the remaining twenty-eight classes of counties of the state, why should they not be allowed the same relief? In twenty-eight classes of counties the legislature fixed the salaries of county officers at a definite sum, in proportion to the duties of the office; in twenty classes of counties the minimum sum only is fixed, and the boards of supervisors have the power to fix the compensation for the performance of the duties of the various officers at any sum which the board may think is a proper proportion as compared with the duties of the office. This is an unjust discrimination against twenty-eight classes of counties; and the provision, not acting alike upon all classes of counties, necessarily destroys the uniformity of the operation of the act. i
Respondent’s counsel insist that an amendment to the *635 act of 1883, relating to the compensation of county officers of one class, of counties, is a law of a general nature in itself, and that consequently this provision of section 211, applying to twenty classes of counties, is no less a general law; and purporting to deal with twenty counties only, and having a uniform operation as to those classes, the provision complies with the test in both respects, and is therefore within the constitution. This contention is true to a limited extent, and was so held by this court in Cody v. Murphey, 89 Cal. 522, wherein it was decided that legislation pertaining to the compensa-' tion of officers of one class of counties was a law of a general nature, and in that case uniform in its operation, it being directly in line with all other provisions of the County Government Act pertaining to the same subject-matter. But there is a broad distinction between that provision of the act and the one under consideration in this case. If the legislature, as has been attempted here, can delegate the power to the supervisors to regulate the salaries of county officers of twenty classes of counties, it could provide a separate and distinct means for the regulation of the salaries of the county officers of each separate and distinct class of counties, and thus the uniformity of the operation of the County Government Act, upon the question of the regulation of salaries of county officers, would consist solely in the fact that the operation of the act was uniformly different in each class of counties.
It would seem that the case of Miller v. Kister, 68 Cal. 142, is conclusive against respondent upon this question. In that case the section under consideration was section 4 of the act of 1885, amending the County Government Act as to salaries (Stats. 1885, p. 195), which section provided that in three classes of counties the salaries fixed in said amendment (all reductions, which were within the power of the legislature to make) should take effect on the first day of the following month, while the amendment provided that in all other classes the salaries should not take effect during the terms of the then officers. *636 Held, — 1. That the same was special legislation; and 2. That the operation of the law is exceptional and eccentric, and causative of discrimination between the officers upon whom it is to operate. “ The few are excluded from the privileges given to the many.” And the section was held to be void. We think this provision destroys the uniformity of the operation of the County Government Act in respect to the matters upon which it attempts to speak, and is a violation of a plain requirement of the constitution, which should be scrupulously guarded and upheld.